JOSEPH TAYLOR *v.* JACOB RICHARDSON, Sheriff.

In an action of replevin founded on a recent purchase and bill of sale for the goods, the jury must be satisfied that it was an actual, and not a pretended sale of them merely by the vendor to the purchaser, and that they were delivered into his possession as soon as they reasonably and conveniently could have been under the circumstances with the exercise of due diligence and attention on the part of the purchaser, or he will not be entitled to recover in the action.

But if the jury should not be so satisfied, and the goods, though replevied, have in the mean while remained in the custody of warehousemen who have a large claim and a lien upon them for storage, the verdict for the defendant, is not to be for a return of the goods, but for damages to the full value of the goods when replevied.

REPLEVIN for certain machinery and two boilers to be

used in an india-rubber mill by the plaintiff against the defendant, as sheriff, who had laid an attachment on them as the goods of Thomas Scott at the suit of Jonathan Strayhorn, against him, then in the custody and possession of Tatnall, Warner & Co. who were carriers and warehousemen of goods, with whom the goods had previously been deposited by Scott. The attachment was issued, and was laid in their hands by the Sheriff on the 29th of April 1869. The plaintiff whose residence was in Chester, Penna. and who was the father-in-law of Scott, produced and proved by the witness to it, a receipt of the date of March 1st 1869 from Scott to him of $575, paid him for the machinery and boilers, and although he did not see the money counted, he saw some bank notes laid on the table by the plaintiff, and that Scott was indebted to him at the time. The latter soon after removed to Missouri.

*Gray*, for the defendant, denied that the sale was *bona fide*, but contended that even, if it was not positively made *male fide* and without any fair and adequate price paid for the property by the plaintiff, as it had been made by Scott to his father-in-law evidently in anticipation of his insolvency and speedy removal from the State to the West, it was in contravention of the policy of our statute of frauds, so far, at least, as his creditors were concerned. But, at all events, in such a case a strict compliance with the most rigid requirements of the law in all respects was required to entitle the plaintiff to recover; and as no delivery had followed the sale of the goods up to the time the attachment was laid in the hands of the bailees of them, nearly a month after the sale, the sale was incomplete and invalid for that reason as against the attaching creditors. No actual or unusual delivery or change in the position or deposit of the goods at the time was necessary, however, under the circumstances, and hence the stronger was the reason for requiring a rigid compliance with the demands of the law and the statute in that respect in such a case. The statute requires in such

a case that the delivery of the goods shall be as soon after the sale as it conveniently can be, while the rule of the common law on the subject is, that if the goods are in the possession of a bailee at the time of the sale, notice of the sale must not only be given to the bailee, but must be accepted and assented to by him in order to transfer the possession or delivery of the goods from the vendor to the purchaser. 1 *Smith's Ld. Ca.* 55, 81. 60 *M. and W.* 119. 10 *E. C. L. R.* 197. *Bro. on Stat. of Frauds* 327.

*Whitely*, for the plaintiff. The heavy and cumbersome nature of the property was to be taken into consideration by the court and jury when inquiring and determining under the special circumstances of the case, the residence of the purchaser being in Chester, Pa., and the property stored in Wilmington, what would have been a reasonable and convenient time within which it should have been actually delivered to and removed by the plaintiff after the purchase of it by him. But as it was then stored in a warehouse in Wilmington, and was in the care and custody of the keepers of it, and was not in the actual possession of the vendor who was then in Chester also, his sale and bill of sale and receipt for it, if *bona fide* was sufficient in law under the circumstances, not only to transfer to him all the right and property of the vendor in the goods, but also his constructive possession of them in the hands of his bailee and agent merely to hold them for him, until he saw proper to sell them or take them out of his possession, without any notice whatever to the bailee of such sale and transfer, or any acceptance of, or assent to such notice on his part.

*The Court, Gilpin, C. J., charged the jury*, that according to the proof as to the nature of the articles in question, being bulky and heavy, and the situation of the plaintiff at the time, they were, of course, incapable of an immediate actual delivery to him on the occasion of the alleged sale of them to him by Scott. To entitle the plaintiff to recover, however, the jury must be satisfied that there

was an actual sale of them by Scott to him, and that it was not a pretended sale merely for the purpose of preventing his creditors frem seizing them for the payment of his debts; and that they were delivered to him in a reasonable and convenient time after such actual sale to him, that is to say, as soon as it could conveniently have been done under the circumstances with the exercise of due and proper diligence and attention on his part for that purpose. But his residence was at Chester, Pa. and the goods were all the while which intervened between the sale and the service of the attachment by the Sheriff, and still are, in the custody and possession of Tatnall, Warner & Co. in the City of Wilmington, who are carriers and storers of goods in that city, and their actual possession of them as the agents and bailees of Scott at the time of the sale, was his constructive possession of them in law, and had either he or the plaintiff given them notice of the sale, it would in law have been equivalent to a delivery of them to the plaintiff, and would have from that time constituted them his bailees of the goods, as they had before been the bailees of Scott in respect to them. But it would be for the jury to determine under all the facts and circumstances proved in the case, whether there was an actual sale of the identical goods in question, by Scott to the plaintiff, and if so, whether they had afterward been delivered in a reasonably convenient time to the plaintiff. And if they were satisfied on both those points that such was the case, their verdict should be for the the plaintiff, but if not, for the defendant. And if for the defendant, as the goods were replevied and delivered to the plaintiff, and have since remained, and for a long time, in the custody and possession of Tatnall, Warner & Co., who will have a large claim and a lien upon them for storage, which will be equivalent to a very material depreciation in the value of them, and to a partial conversion or destruction of them in the mean while, their verdict should be, not for a return of the goods to the defendant, but for damages for him to the full value of the goods at the time they were replevied.